IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03181-KLM

PATRICIA WRIGHT, formerly known as Patricia Critchfield,

      Plaintiff,

v.

TWIN CITY FIRE INSURANCE COMPANY, and
THE WARRANTY GROUP, L.L.C., also known as TWG Holding, L.L.C.,

      Defendants.
_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Leave to File an Amended Answer to Amended Complaint** [#137][1] (the "Motion").  Plaintiff filed a Response [#147] in opposition to the Motion, and Defendant filed a Reply [#149].  The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#137] is **GRANTED in part** and **DENIED in part**.

## I.  Background

### A,     Factual and Procedural Background

Plaintiff initiated this action by filing a Complaint in Boulder County District Court on April 1, 2011.  *See Complaint* [#2] at 1.  On December 7, 2011, Defendants removed the

_____

[1]  "[#137]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Order.

case to federal court. *See generally Notice of Removal* [#1]. As the basis for removal, Defendants asserted federal question jurisdiction based on Plaintiff's allegations pursuant to the Employee Retirement Income Security Act ("ERISA"). *Id.* at 3-5. Alternatively, Defendants alleged jurisdiction based on diversity of citizenship. *Id.* at 5-13.

On April 4, 2012, the Court imposed a deadline of April 18, 2012 for Plaintiff to file an amended complaint. *See generally Order* [#38]. On April 19, 2012, Plaintiff filed a Motion to Amend the Complaint [#39], which included a proposed Amended Complaint. Despite the late filing, the Court accepted the Motion to Amend for resolution, granted it, and denied Defendant's Amended Motion to Dismiss as moot. *See generally Minute Order* [#40].

The Amended Complaint alleges that the former Hartford defendants[2] and Defendant Twin City Fire Insurance Company ("Twin City") were workers' compensation insurance carriers for Defendant The Warranty Group ("TWG"). *Amended Complaint* [#41] at 2. Plaintiff further alleges in the Amended Complaint [#41] that "Defendants have failed, or refused to pay, fair workers' compensation benefits to the Plaintiff" and that "Defendants have unreasonably delayed or denied workers' compensation benefits to Plaintiff." *Id.* at 3-4. Plaintiff's Amended Complaint contains no allegations regarding disability benefits and is limited to allegations regarding workers' compensation benefits. *See generally Amended Complaint* [#41].

---

[2] Former defendants the Hartford; the Hartford Financial Services Group, Inc.; and Hartford Life and Accident Insurance Company were dismissed from this action on May 11, 2012. *See generally Notice of Rule 41(a)(1)(A)(i) Voluntary Dismissal of Defendants The Hartford, The Hartford Financial Services Group, Inc., and Hartford Life and Accident Insurance Company* [#53]; *Order* [#54].

On May 18, 2012, Defendants filed their Answer to Plaintiff's Amended Complaint [#55] (the "Answer") in which they asserted 25 affirmative defenses. *See Answer* [#55] at 5-8.

On July 3, 2012, the Court held a Scheduling Conference during which it entered a Scheduling Order [#67], setting September 17, 2012 as the deadline for amendment of pleadings. *See Sched. Order* [#67] at § 9(a). During the remainder of 2012 and into 2013, the parties filed several motions seeking to adjust the deadlines set in the Scheduling Order. *See generally Unopposed Motion to Modify Scheduling Order to Extend Expert Disclosure and Rebuttal Deadlines* [#80]; *Unopposed Motion to Extend Expert Disclosure Deadlines* [#82]; *Unopposed Motion to Continue Trial and Amend Case Management Order* [#86]. In response to one of these motions, the Court ordered the parties to submit a proposed amended scheduling order. *Minute Order* [#87] at 1. On March 11, 2013, the Court entered the Amended Scheduling Order [#90], which set June 21, 2013 as the new deadline for amendment of pleadings. *Am. Sched. Order* [#90] at § 9(a). Following entry of the Amended Scheduling Order, the parties filed motions seeking to modify the deadlines set in it. *See generally Joint Motion to Amend the Amended Scheduling Order (Doc. 90)* [#96]; *Second Joint Motion to Reconsider the Motion to Amend the Amended Scheduling Order (Doc. 90)* [#100]. The parties attached a proposed second amended scheduling order [#100-1] to one of these motions, which the Court entered on June 11, 2013. *See generally Second Am. Sched. Order* [#103]. The Second Amended Scheduling Order set October 25, 2013 as the deadline for amendment of pleadings. *Id.* at § 9(a). On October 25, 2013, Plaintiff filed her Notice of Intent to Amend Complaint to Include a Claim for Exemplary Damages [#115], however, to date Plaintiff has not filed a Second Amended

Complaint.

Subsequently, the parties have filed motions seeking to amend deadlines set in the Second Amended Scheduling Order, but have not sought to amend the deadline for amendment of pleadings. *See generally Joint Motion to Amend the Second Amended Scheduling Order (Doc. 104) and Reschedule the Trial Preparation Conference* [#123]; *Motion to Continue Trial, Dispositive Motion Deadline, Pre-Trial Deadlines, and other Deadlines* [#125].

**B.     The Motion[3]**

In the Motion, Defendants seek to amend their Answer [#55] to delete certain affirmative defenses and add the two affirmative defenses of (1) release, accord, and satisfaction, and (2) statute of limitations. *See Motion* [#137] at 1.  Defendants argue that "[g]ood cause exists for extending the deadline to file an amended pleading because evidence and information that Defendants have only recently been able to confirm establishes the viability of [the] two additional defenses." *Id.* Specifically, Defendants argue that their affirmative defense of release, accord, and satisfaction is based on a settlement agreement Plaintiff executed in her underlying workers' compensation action on January 29, 2013. *Id.* at 7.  Defendants further argue that they sought discovery from Plaintiff relating to her workers' compensation claim prior to the expiration of the deadline to amend pleadings but that she did not produce responsive documents prior to the deadline. *Id.* at 8; *see also Plaintiff's Objections and Responses to Twin City Fire Insurance Company's and the Warranty Group, Inc.'s First Combined Set of Interrogatories*

---

[3] The Court discusses only those arguments that merit analysis.

*and Requests for Production of Documents* [#137-12] at 15 (RFP 12: "Produce the entire file constituting or related to your workers' compensation claim, W.C. No. 4-741-823." Response: "See Plaintiff's Objections and Responses to Requests for Production Nos. 1 and 2.  See also the disclosures [sic] documents of both parties.").  Defendants maintain that they sent Plaintiff a letter on January 29, 2013 "in which Defendants asked Plaintiff to produce documents responsive to Request No. 12, but never received a response to the letter." *Motion* [#137] at 8 (citing to *Motion, Ex. 11* [#137-11]).  Defendant avers that in September 2013, Plaintiff agreed to produce her file relating to her workers' compensation claim, but that Plaintiff "said it would take some time to produce because her lawyers needed to perform a privilege review." *Id*.  Defendants maintain that they understood that Plaintiff intended to produce the file in October 2013. *Id*.  Defendants state that "Plaintiff never produced the file in 2013.  Plaintiff finally started producing the file around March 24, 2014." *Id*.

Defendants state that after learning of the January 29, 2013 settlement agreement, defense counsel "mentioned it to Plaintiff's counsel who said that there was an explicit agreement that the underlying workers' compensation settlement agreement did not apply to this insurance bad faith action." *Id*. at 7.  They maintain that "[n]othing in Defendants' files indicated any such agreement," which is why Defendant sought discovery regarding the workers' compensation claim. *Id*. at 8.  Now that Plaintiff has produced the requested file relating to her workers' compensation claim, Defendants maintain that it is "only [this] recently obtained information that would allow them to meet their Rule 11 obligations to assert release, accord and satisfaction." *Id*. at 9.

Regarding the statute of limitations defense, Defendants similarly argue that it was

only through Plaintiff's supplemental interrogatory responses served on October 11, 2013, that Defendants were made aware that Plaintiff's claims may trigger this defense. *Id.* at 9-10. Defendants maintain that this interrogatory response was not enough to meet their Rule 11(b)(2) obligation of ensuring that they only assert an affirmative defense that is legally supportable. Defendants state that "[w]hile Plaintiff has alleged conduct by Defendants that had allegedly harmed her in her supplemental interrogatory responses, she did not, at the time, make any statements as to when she knew or should have known about this conduct that allegedly injured her." *Id.* at 10. Defendants maintain that they "wanted to ask her questions about this [at] her deposition," but that Plaintiff repeatedly failed to attend her scheduled deposition. *Id.* Defendants argue that because the two-year statute of limitations "accrues when 'both the injury and its cause are known or should have been known through the exercise of reasonable diligence,'" *id.* (quoting *Harmon v. Fred S. James & Co. of Colorado, Inc.*, 899 P.2d 258, 260 (Colo. App. 1994)), understanding when Plaintiff knew or should have known about her alleged injury was necessary before Defendants could assert the statute of limitations as an affirmative defense. *Id.* Because they were not able to question Plaintiff at her deposition, Defendants argue that they "waited for Plaintiff to produce her underlying worker's compensation file to see if there was other evidence that may support whether they had a Rule 11 basis to assert this defense." *Id.* at 11. Defendants aver that the workers' compensation claim documents produced by Plaintiff allowed them to "determine[ ] that they do have a Rule 11 basis to assert this affirmative defense . . . ." *Id.* Therefore, Defendants argue that "waiting for discovery that would support their Rule 11 obligations in asserting these defenses" is good cause for their delay in seeking to amend their Answer. *Id.*

6

Turning to the standard for amendment of pleadings under Fed. R. Civ. P. 15, Defendants argue that there was no undue delay in this case because Defendants filed the Motion once they had enough information to confirm that there is a legal basis to assert the two affirmative defenses. *Id.* at 13. Defendants further argue that there is no prejudice to Plaintiff. *Id.* at 12-13. They also argue that the Motion was not filed in bad faith or for a dilatory motive. *Id.* at 13. In addition, Defendants maintain that the proposed amendments are not futile. *Id.* at 13-14.

In her Response, Plaintiff argues that Defendants have unduly delayed in bringing the Motion and that if the Motion is granted, Plaintiff will be prejudiced. *Response* [#147] at 1. Plaintiff maintains that Defendants knew of their basis for asserting release, accord, and satisfaction as an affirmative defense "as early as January 2013, when the [settlement] agreement was entered into," and that "Defendants' assertions that they somehow needed additional information from Plaintiff to satisfy their obligations under [Fed. R. Civ. P.] 11 is little more than an effort to disguise their lack of good cause and due diligence for seeking [ ] leave to amend earlier." *Id.* at 2.

With regard to the statute of limitations defense, Plaintiff argues that her December 5, 2012 response to Defendants' Interrogatory No. 4 "informed Defendants that Plaintiff was asserting events more than two years prior to her complaint as a basis for her bad faith claim." *Id.* at 8. Interrogatory No. 4 stated:

> Identify, describe, and itemize the economic losses, including without limitation the alleged loss of Plaintiff's home and vehicles, allegedly due to the delay or denial of workers' compensation benefits. (Please see the allegations in paragraph 7 of your Complaint.)

*Response, Ex. 4* [#147-4] at 3. Plaintiff responded:

> After my injury on 10/03/07, the repeated delay and denial of benefits, treatment, and only partial payment of workers' compensation benefits, led to the [sic] my being unable to maintain payments on my home and vehicle. My ex-husband and I owned a home in Jefferson County, Colorado, located at 7481 Marshall Street, Arvada, CO 80333, which we bought for $213,000. Because of the delay and denial of benefits by the Hartford, I ended up losing my home, and it was sold in a foreclosure sale for $186,000 in 2008. This information is available on the Jefferson County Tax Assessor's website. Because real estate prices changed so much around this time period, I am unsure of the value of the property at the time it was lost to foreclosure. I will likely need an expert's opinion to provide this information.
>
> The loss of my home, forced me to move into an apartment. The continual delay and denial of benefits and medical benefits by The Hartford caused me to be evicted from my apartment in 2008 as I was unable to pay my rent. . . . Due to the continued delay and denial of benefits, I was ultimately evicted and currently must reside with my parents.
>
> I purchased a 2004 or 2005 Saturn L200 for $10,000 in 2009. Due to the Hartford's refusal to provide my workers' compensation benefits, I could not afford my car payments and ended up losing the vehicle within a year's time. I am unsure what the value of my vehicle was at the time I lost it. Finally, the two year delay in getting my hip surgery resulted in lost earnings and permanent physical impairment.

*Id.* at 3-4. Plaintiff argues that Defendants' alleged knowledge of her reliance on events that took place more than two years prior to the filing of her complaint, "demonstrates that Defendants have unduly delayed in bringing their" Motion. *Response* [#147] at 12.

Regarding Defendants' defense of release, accord, and satisfaction, Plaintiff argues that it was only after "Plaintiff advised Defendants [on February 17, 2014] that their interrogatory responses were asserting defenses that [Defendants] had not pled, [that] Defendants supplemented their discovery responses . . . . [and] asserted for the first time, that they desired to amend their answer to" assert this affirmative defense. *Id.* at 13. Plaintiff further argues that "Defendant[s] had more than adequate information, for the

8

purposes of Rule 11, to assert such defenses[4] prior to the deadline [for amendment of pleadings]." *Id.* at 15.  Plaintiff argues both that Fed. R. Civ. P. 11 only requires a reasonable investigation into the basis for the assertion of a defense and that a party is allowed to "make reasonable inferences based upon available information." *Id.*  Plaintiff maintains that Defendants had ample time to amend their Answer to include the two affirmative defenses and that "Defendants simply chose to ignore the deadline." *Id.*  Further, Plaintiff argues that she will be prejudiced if the Motion is granted because she will be required to take discovery relating to these two defenses and the discovery deadline in this case is June 2, 2014. *Id.* at 16.

In their Reply, Defendants revisit the arguments advanced in the Motion and attack Plaintiff's Response.  With regard to the statute of limitations defense, Defendants argue that "Plaintiff concedes that the first time she specifically identified such allegedly delayed benefits was in her supplementary discovery responses, the final versions of which she only served on the amendment deadline of October 25, 2013" and that Defendants, therefore, did not unduly delay seeking to amend to add the statute of limitations defense. *Reply* [#149] at 2.  Defendants further argue that the response to Interrogatory No. 4, discussing Plaintiff losing her home and car, did not put Defendants on notice that Plaintiff was asserting that "insurance benefits [were] supposedly [ ] delayed more than two years before she filed her complaint" because Plaintiff did "not allege <u>what</u> home or <u>what</u> vehicles she allegedly lost or <u>when</u>, over the course of the five-and-a-quarter years her workers' compensation claim lasted." *Id.* at 5. (emphasis in original).  Defendants aver that "[w]hile

---

[4]  The use of the plural by Plaintiff here appears to be in error as the rest of this paragraph discusses only Defendants' request to assert the defense of release, accord, and satisfaction.

[Plaintiff's] home may have been <u>sold</u> in 2008, public records and Plaintiff's statements to her medical providers establish that the home went into foreclosure in July 2007, <u>before</u> her October 3, 2007, work incident, and thus any alleged delayed or denied benefits could not have caused her home entering foreclosure." *Id.* at 6 (emphasis in original). Defendants, therefore, conclude that "the sale information in the December 2012 discovery responses did not give notice to Defendants that any damages were alleged to be the result of time-barred claims for statutory delay" and that they "should not be expected to have inferred that Plaintiff meant to allege that effects preceded their supposed causes." *Id.* Defendants then revisit their argument that their January 29, 2013 letter to Plaintiff regarding deficiencies in her responses to Defendants' discovery responses attempted to clarify the bases for Plaintiff's claims and that Plaintiff never responded to the letter. *Id.* at 8-9 (citing to *Motion, Ex. 11* [#137-11] at 2). Defendants further argue that regardless of the factual information contained in her responses to the discovery requests, those responses did not identify "bad faith insurance company conduct or insurance benefits that were allegedly delayed or denied, much less <u>when</u> they were allegedly delayed or denied." *Id.* at 10-11 (emphasis in original). As a result, Defendants argue, they sought to depose Plaintiff and sought the production of the workers' compensation file "to determine when Plaintiff knew she had been harmed and the cause of it, all in order to meet their Rule 11 obligations in asserting a statute of limitations defense." *Id.* at 11.

Regarding the release, accord, and satisfaction defense, Defendants argue that "Plaintiff's [R]esponse does not address or dispute that her counsel had represented to Defense counsel that there was supposedly some sort of agreement that Plaintiff's workers' compensation settlement agreement excluded from its release this bad faith action" and

that Plaintiff did not produce the related documents until March 2014. *Id.* at 2; 11-12.

Finally, with regard to Plaintiff's argument that she will be prejudiced if the Motion is granted, Defendants maintain that Plaintiff was on notice that Defendants intended to seek to amend to add these two defenses in March 2014 and could have served additional discovery at any time thereafter on issues relating to the defenses. *Id.* at 13-14. In fact, Defendants state that Plaintiff served additional discovery requests on them two days after the Motion was filed and that those requests did not address the two affirmative defenses they seek to add through the Motion. *Id.* at 14. Defendants also state that they do not oppose an extension of discovery, but that additional discovery is not necessary. *Id.* First, with regard to the statute of limitations defense, they aver that, "it is Plaintiff's knowledge that matters." *Id.* at 14. Second, with regard to the release, accord, and satisfaction defense, Defendants argue that the Court will "look to the four corners of the contract—not parol evidence." *Id.*

## II. Analysis

As an initial matter, the Motion does not comply with D.C.COLO.LCivR 15.1(a), which requires, that "[a] party who files an amended pleading under Fed. R. Civ. P. 15(a)(1) or with the consent of the opposing party shall file a separate notice of filing the amended pleading and shall attach as an exhibit a copy of the amended pleading which strikes through . . . the text to be deleted and underlines . . . the text to be added." The Motion is subject to denial on this basis alone. Nevertheless, in the interest of expedience, the Court will consider the merits of the Motion.

The pleading amendment deadline expired on October 25, 2013. *See Second Am. Sched. Order* [#103] § 9(a); *Motion* [#137] at 5. The instant Motion was filed on March 26,

2014 and is, therefore, untimely.  *See generally Motion* [#137].  Accordingly, Defendant must provide good cause for its failure to timely move for amendment pursuant to Fed. R. Civ. P. 16(b)(4).  If good cause is shown, the Court next considers any arguments raised by the parties related to whether justice would be served by amendment.  Specifically, the Court should grant leave to amend "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend need not be given, however, when the moving party unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## A.    Good Cause to Modify the Pleading Amendment Deadline

To demonstrate good cause pursuant to Rule 16, the moving party must "show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 1009) (citation omitted); Minter *v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts . . . .  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (internal quotation and citation omitted); *accord Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (holding that "total inflexibility is undesirable" in the context of a motion to adopt a new scheduling order).  "While rigid adherence to the pretrial scheduling order is not advisable," *SIL-FIO v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990), the pleading amendment deadline requires that parties conduct discovery efficiently and promptly in order to timely comply.  *See Granite*

*Southlands Town Center LLC v. Alberta Town Center, LLC*, No. 09-cv-00799-ZLW-KLM, 2010 WL 2635524, at *2 (D. Colo. June 8, 2010) (noting that "deadlines to amend a party's pleading are set at the outset of the case to require [parties] to prioritize their discovery and attempt to obtain information that may be relevant to claim amendment sooner rather than later."); *Sanchez v. City & Cnty. of Denver ex rel. Bd. of Water Comm'rs*, No. 07-cv-01805-MSK-BNB, 2007 WL 4557842, at *1 (D. Colo. Dec. 20, 2007) (noting that "the purpose of the deadline to amend contained in the Scheduling Order is to force the parties to make any known amendments immediately so that all discovery in the case, including the earliest discovery, is taken with the claims and defenses as the parties expect them to be"). However, "[t]he fact that a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order constitutes good cause for such amendment pursuant to Rule 16(b)[(4)]." *Riggs v. Johnson*, No. 09-cv-01226-WYD-KLM, 2010 WL 1957110, at *3 (D. Colo. Apr. 27, 2010), *adopted by* 2010 WL 1957099 (D. Colo. May 17, 2010), (citing *Pumpco*, 204 F.R.D. at 668-69).

### 1.    Release, Accord, and Satisfaction

Here, as noted above, Defendants assert that their affirmative defense of release, accord, and satisfaction is based on a settlement agreement Plaintiff executed in her underlying workers' compensation action on January 29, 2013 and which she did not produce until March 24, 2014. *Motion* [#137] at 7-8. Defendants argue that they "awaited production of this file in order to determine whether there was any agreement in Plaintiff or her attorney's file that indicated that the settlement agreement in Plaintiff's underlying worker's compensation case did not apply to her current insurance bad faith matter." *Id.* at 9. Defendants maintain that once they reviewed the file, they did not find anything in it

13

to support that there was such an agreement. *Id*. In sum, Defendants maintain that there is good cause to allow the proposed amendment because they only learned of the basis for this affirmative defense a few weeks prior to filing the Motion.

Plaintiff appears to conflate her arguments under Rule 16 and Rule 15. *See Response* [#147] at 5 (heading of Section III(A) addressing undue delay and good cause jointly), 12 (heading of Section III(B) addressing undue delay and good cause jointly). In short, she argues that Defendants unduly delayed amending their Answer and that the same facts that support her delay argument support an argument that Defendants have not shown good cause pursuant to Rule 16. Specifically, Plaintiff maintains that her complaint and discovery responses included information that put Defendants on notice that they should have asserted the two affirmative defenses. *Id*. at 5-14. Plaintiff also argues that Rule 11 only requires a reasonable investigation and, therefore, Defendants did not need to wait for the additional discovery they sought in order to determine whether they should amend their Answer. *Id*. at 15.

As noted above, to demonstrate good cause pursuant to Rule 16, the moving party "must provide an adequate explanation for any delay." *Strope*, 315 F. App'x at 61 (citation omitted). With regard to the release, accord, and satisfaction defense, Defendants have met this burden. Plaintiff does not dispute Defendants' allegations that after learning of the January 29, 2013 settlement agreement, defense counsel "mentioned it to Plaintiff's counsel who said that there was an explicit agreement that the underlying workers' compensation settlement agreement did not apply to this insurance bad faith action." *Motion* [#137] at 7. Nor does Plaintiff dispute that the requested workers' compensation file was not fully produced to Defendants until March 24, 2014. *Id*. at 8. To the extent that

14

Plaintiff argues that her counsel's February 17, 2014 email to Defendants' counsel alerted Defendant that a discovery response was based on a defense that was not pled by Defendants, *Response* [#147] at 13 (citing to *Response, Ex. 10* [#147-10]), such argument is unavailing because, even if Plaintiff brought this issue to Defendants' attention in February 2014, it was not until March 2014 that Plaintiff produced the documents relating to the settlement of the workers' compensation claim which forms the basis for the assertion of this affirmative defense.  Further, based on the information provided by the parties, it does not appear that there were other documents produced or discovery responses that would have allowed Defendants to satisfy themselves that they could assert this defense prior to the March 2014 production of Plaintiff's workers' compensation file. This is particularly true in light of the fact that Plaintiff's counsel specifically told Defendants' counsel that there was an agreement that the settlement agreement did not apply to the claims asserted here.   Therefore, the Court finds that Defendants have provided an adequate explanation for their delay in seeking leave to amend to add the affirmative defense of release, accord, and satisfaction.  *See Riggs*, 2010 WL 1957110, at *3 (citing *Pumpco*, 204 F.R.D. at 668-69) ("The fact that a party first learns through discovery of information which may lead to amendment of deadlines set forth in the Scheduling Order constitutes good cause for such amendment pursuant to Rule 16(b).").

### 2.    Statute of Limitations

Regarding the statute of limitations defense, Defendants argue that it was only through Plaintiff's supplemental interrogatory responses served on October 11, 2013, that Defendants were made aware that Plaintiff's claims may trigger this defense.  *Id.* at 9-10. Defendants further argue that the October 2013 interrogatory response was not enough to

meet their Rule 11(b)(2) obligation of ensuring that the affirmative defense is legally supportable. *Id.* at 10. Because they were not able to question Plaintiff at her deposition due to her repeated failure to appear for it, Defendants argue that they "waited for Plaintiff to produce her underlying worker's compensation file to see if there was other evidence that may support whether they had a Rule 11 basis to assert this defense." *Id.* at 11.

Plaintiff's response to Interrogatory No. 4, which was sent to Defendants in December 2012, states that Plaintiff seeks damages for economic losses including a foreclosure sale of her house in 2008 and the loss of her car "within a year" of the 2009[5] purchase of the car as a result of "Hartford's refusal to provide my workers' compensation benefits." *Response, Ex. 4* [#147-4] at 3-4. These allegations put Defendants on notice in December 2012 that Plaintiff seeks damages for incidents that allegedly occurred more than two years prior to filing her complaint. Accordingly, Defendants knew or should have known that they may need to amend their Answer to Plaintiff's Amended Complaint [#55] shortly after December 2012.

Defendants' argument that they were not on notice that they should assert the statute of limitations defense because Plaintiff's house was foreclosed in July 2007, a few months prior to the incident that forms the basis for her claim of workers' compensation benefits, seems compelling at first blush. *See Reply* [#149] at 6. However, this argument is erroneously based on Defendants' underlying assumption that they should not have to timely assert an affirmative defense simply because they believe they will prevail in showing that Plaintiff is not entitled to these damages. Fed. R. Civ. P. 8(c)(1)'s requirement

---

[5] Plaintiff initiated this action on April 1, 2011. *See Compl.* [#2] at 1. Therefore, if a two-year statute of limitations applies, the limitations period would begin on April 1, 2009.

that a party state its affirmative defenses in a responsive pleading does not carve out an exception simply because the party believes the claim will fail on its merits and a defense is therefore superfluous.  Here, Plaintiff provided Defendants with information making clear that she seeks to recover for losses she allegedly incurred in 2008 relating to the foreclosure of her house.  The fact that Defendants believe they have information that proves that Plaintiff may not seek coverage for those losses, does not excuse Defendants from asserting an affirmative defense in a timely manner.

Defendants also argue that they needed discovery regarding these allegations to meet their Fed. R. Civ. P. 11 obligations before asserting the statute of limitations as a defense.  *Reply* [#149] at 8-9.  Specifically, Defendants argue that because the two-year statute of limitations "accrues when 'both the injury and its cause are known or should have been known through the exercise of reasonable diligence,'" *Motion* [#137] at 10 (quoting *Harmon v. Fred S. James & Co. of Colo., Inc.*, 899 P.2d 258, 260 (Colo. App. 1994)), understanding when Plaintiff knew or should have known about her alleged injury was necessary before Defendants could assert the statute of limitations as an affirmative defense.  *Id.*  Defendants are correct that Fed. R. Civ. P. 11 allows a court to impose sanctions on an attorney or party who files a pleading that includes a defense without making "an inquiry reasonable under the circumstances" to satisfy himself that the defense is "warranted by existing law or by a nonfrivolous argument."  Fed. R. Civ. P. 11(b); *see, e.g., Sealtite Corp. v. Gen. Servs. Admin.*, 614 F.Supp. 352, 355 (D. Colo. 1985).  Such an inquiry does not require an exhaustive review of all facts and all case law relating to the statute of limitations.  Rather, when considering an attorney's conduct a court examines whether the attorney's conduct was objectively reasonable under the circumstances.  *See*

17

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) ("Rule 11, for example, imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith."); *Coffey v. Healthrust, Inc.*, 1 H.3d 1101, 1104 (10th Cir. 1993) ("Rule 11 sanctions serve to punish a knowing filing of a false and misleading pleading."); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2014 WL 201662, at *4 (D. Colo. Jan. 17, 2014). Here, in light of Plaintiff's response to Interrogatory No. 4, Defendants should have been able to quickly determine what the applicable statute of limitations is, whether they needed additional discovery regarding the statute of limitations, and whether they needed to amend their Answer to include this affirmative defense. The argument that a great deal of additional discovery was needed to determine whether asserting the defense was reasonable under the circumstances is not convincing. Rule 11 does not require a party to reach a legal conclusion that it will prevail on a claim or defense; it simply requires that a reasonable inquiry be made and, in this case, such an inquiry could have been made and completed not long after the December 2012 interrogatory responses were served on Defendants. However, Defendants did not file the instant Motion until March 26, 2014—more than a year after they received the interrogatory responses. While the Court is sympathetic to Defendants' argument that Plaintiff's failure to attend her deposition kept them from determining when she knew of the alleged injury, Defendants were not limited to that one form of discovery. They could have served Plaintiff with an additional interrogatory or request for production specifically tailored to seek information that would allow them to determine if they had a basis for asserting this affirmative defense. While Defendants maintain that Plaintiff failed to respond to discovery requests in a timely manner, Defendants could have sought relief from the Court if Plaintiff refused to respond

18

to such a discovery request.  Further, to the extent Defendants argue that Plaintiff's production of her workers' compensation file was what allowed them to determine that they have a legal basis to assert this defense, this argument does not demonstrate the diligence required to show good cause under Rule 16.

In contrast to Defendants' release, accord, and satisfaction defense, for which they learned the legal basis when the workers' compensation file was produced, Defendants were on notice in December 2012 that Plaintiff was potentially seeking damages allegedly incurred more than two years prior to the filing of her complaint.  Accordingly, the Court finds that Defendants have not provided "an adequate explanation for any delay," *Strope*, 315 F. App'x at 61 (citation omitted), and, therefore, they have not demonstrated good cause pursuant to Rule 16.  *Cf. Ayon v. Kent Denver School*, No. 12-cv-02546-WJM-CBS, 2014 WL 85287, *3 (D. Colo. Jan. 9, 2014) (adopting recommendation that defendant's motion to amend to add an affirmative defense should be denied in part because the motion "was filed more than seven months after the deadline to amend pleadings, and the new information led to minimal research and a one-line proposed amendment.").  Therefore, to the extent the Motion seeks to amend the Answer to add the statute of limitations as an affirmative defense, the Motion [#137] is **DENIED**.

Of course, Defendants may seek to admit evidence at trial regarding the factual timeline in this case to attack Plaintiff's claims on the merits.  *Cf. Marino v. Otis Eng'g Corp.*, 839 F.2d 1404, 1408 (10th Cir. 1988) (discussing introduction of evidence that could support an affirmative defense and that could also refute plaintiff's allegations regarding causation); *LaFont v. Decker-Angel*, 182 F.3d 932, *2 (10th Cir. April 30, 1999) (table decision).

### B.      Rule 15(a) Requirements

Because the Court found that Defendants have shown good cause to amend their Answer pursuant to Rule 16 to add their affirmative defense of release, accord, and satisfaction, the Court next turns to Rule 15(a) to determine whether justice would be served by permitting amendment.  In situations where the request falls outside the pleading amendment deadline and good cause is shown, leave should generally be permitted unless the moving party unduly delayed or failed to cure, the opposing party would be unduly prejudiced, or the proposed amendment would be futile.  *Foman*, 371 U.S. at 182.  Plaintiff argues that amendment should be denied based on undue delay.  *Response* [#147] at 12-15.  Plaintiff also argues that she will be prejudiced if the amendment is allowed.  *Id.* at 16.

### 1.      Undue Delay

First, concerning delay, "[t]he important inquiry is not simply whether [Defendants have] delayed, but whether such delay is undue."  *Minter*, 451 F.3d at 1206.  The Tenth Circuit "focuses primarily on the reason for the delay."  *Id.*  A motion to amend is untimely if, among other reasons, the moving party has made the pleading a "moving target" or knowingly waited until the eve of trial to assert a new defense.  *Id.* at 1206 (citations omitted).  Other common reasons for finding undue delay include lack of adequate explanation for the delay and when a moving party knows or should have known of the facts in the proposed amendment but did not include them in the original complaint or any prior attempts to amend.  *Id.* (citations omitted).  When a party provides an adequate explanation for the delay, leave to amend should not be denied on this basis.  *Id.*  Notably, "Rule 16 erects a more stringent standard [than Rule 15(a)], requiring some persuasive reason as to why the amendment could not have been effected within the time frame

20

established by the court." *Colo. Visionary Acad.*, 194 F.R.D. at 687.  Accordingly, for the reasons stated in Section II.A.1, *supra*, the Court finds that Defendants did not unduly delay in seeking leave to amend to add the affirmative defense of release, accord, and satisfaction.  The Court further notes that Defendants acted quickly to add this affirmative defense once Plaintiff produced the workers' compensation file.  *See Martinez v. City & Cnty. of Denver*, No. 11-cv-00192-MSK-KLM, 2012 WL 4097298, at *3 (D. Colo. Sept. 18, 2012).  Thus, the Court finds that the facts of this case do not evidence undue delay.

### 2.   Undue Prejudice

Second, Plaintiff argues that she will be prejudiced if the Motion is granted. "Prejudice to the nonmoving party is the most important factor in considering whether amendment should be permitted."  *Minter*, 451 F.3d at 1207.  "Courts typically find prejudice only when the amendment unfairly affects the [opposing party] 'in terms of preparing [its] defense to the amendment.'"  *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)).  "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the [original pleading] and raise significant new factual issues."  *Id.* (citations omitted).  Here, Plaintiff's prejudice is limited to her belief that she will have to engage in additional discovery as a result of Defendants' amendment of their Answer.  *Response* [#147] at 16.

Engaging in discovery, by itself, is not prejudicial to a party; it is simply a part of litigation.  Further, as Defendants argue, if Plaintiff determines that she needs additional discovery regarding Defendants' affirmative defense of release, accord, and satisfaction, she may request additional discovery and Defendants stated in their Reply that they will not oppose a request for additional discovery regarding this affirmative defense.  *Reply* [#149]

at 14.  In addition, the trial in this case will not begin until October 14, 2014.  Accordingly, the Court finds that allowing Defendants to amend their Answer to add an affirmative defense of release, accord, and satisfaction will not unduly prejudice Plaintiff.  Therefore, the Court **GRANTS** the Motion [#137] to the extent it seeks permission to amend Defendants' Answer to add an affirmative defense of release, accord, and satisfaction

## C.    Additional Edits to the Answer

Defendants also seek to amend their Answer to omit certain affirmative defenses.  Plaintiff does not address this request.  Therefore, the Court treats this portion of the Motion as unopposed.  To the extent the Motion seeks permission to amend Defendants' Answer to omit certain affirmative defenses, the Motion [#137] is **GRANTED**.

## III.  CONCLUSION

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#137] is **GRANTED in part** and **DENIED in part**.

IT IS FURTHER **ORDERED** that on or before **June 13, 2014**, Defendants shall file an amended answer that is consistent with this Order and complies with D.C.COLO.LCivR 15.1(a).

Dated:  June 3, 2014                                        BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

22